UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DESTINY LEWIS,

     Plaintiff,

v.                           CASE NO. 8:24-cv-1864-SDM-SPF

PINELLAS COUNTY
SCHOOL BOARD, et al.,

     Defendants.

_____/

## **ORDER**

Asserting under 42 U.S.C. § 1983 violations of the Fourteenth Amendment and asserting under Florida law several tort claims, Destiny Lewis, parent of M.S., sues (Doc. 2) the Gulfport Police Department, the Pinellas County School Board, Boca Ciega High School, and Sergeant Michael Vandenburg, in his personal capacity. The defendants move (Docs. 27, 30, and 35) to dismiss. Lewis responds (Docs. 41) in opposition to each motion.

## **BACKGROUND**

The school board operates Boca Ciega High School, a public school in Pinellas County, Florida. In September 2022, Lewis's fifteen-year-old daughter, M.S., attended Boca Ciega High School. The school board contracted GPD to provide school security at Boca Ciega High School.

On September 6, 2022, during "gym class" four or five female students "harassed and teased" M.S. (Doc. 2 at 13)  "[T]o stand up for herself," M.S. "responded verbally" to the female students.  "[I]n the hallway" after class, the female students "escalated" the verbal altercation by "ridicul[ing]," "bullying," and "threatening to assault" M.S. (Doc. 2 at 14)  "[D]uring the incident," a school resource officer "grabbed [M.S.'s] arm and displayed his pepper spray cannister to" M.S.  The school resource officer "escort[ed] M.S." to the vice-principal's office.  After release from the vice-principal's office, M.S. "returned to class until the end of the school day." (Doc. 2 at 14)

After her final class and as M.S. walked to "the student pickup area," five or six "girls attempted to physically fight M.S."  To separate M.S. from the female students, Boca Ciega High School "staff" moved M.S. to the school's auditorium.  The earlier "altercations" left M.S. "distraught and panicked." (Doc. 2 at 15)  "[C]oncerned [that] her grandfather . . . was waiting to pick her up," M.S. "ran from the auditorium" to find her grandfather.

After M.S. left the auditorium, the female students "surrounded" M.S. and "began a third verbal disturbance with M.S."  A GPD officer "grabbed" M.S. "from behind," "pinned" M.S. "up against the wall," and handcuffed M.S. (Doc. 2 at 15)  Vandenberg "grab[bed]" M.S.'s arm and moved M.S. to the school's "media center."  Before entering the media center, Vandenberg "slung" M.S. into the media center's door frame.  M.S. "hit her head on the metal divider," and M.S.'s forehead was "split open."  After Vandenberg moved M.S. into the media center, Vandenberg

- 2 -

again "slung" M.S. "onto the ground," which "cut[]" and "bruise[d]" M.S.'s "face and shoulder." Vandenberg held M.S. in the media center until M.S.'s grandfather arrived. M.S.'s mother and grandmother arrived and determined that M.S. needed medical care. At the emergency room, a doctor "diagnosed M.S. with a concussion along with multiple other injuries."

## DISCUSSION

### I. Gulfport Police Department's Motion to Dismiss

GDP argues (Docs. 27 at 5–6) that GPD is not a proper party to this action. A city's "[p]olice [d]epartment is not a proper defendant in a suit for damages because the [p]olice [d]epartment does not have the capacity to sue and be sued." *Fla. City Police Dep't v. Corcoran*, 661 So. 2d 409, 410 (Fla. 3rd DCA 1995). "Where a police department is an integral part of the city government as the vehicle through which the city government fulfills its policing functions, it is not an entity subject to suit." *Eddy v. City of Miami,* 715 F.Supp. 1553, 1556 (S.D. Fla. 1989).

Lewis argues that although "GPD may be an 'integral part of the city' and the vehicle through which the city fulfills its policing functions, [Lewis] is not suing GPD for an act related to its policing functions for the city." Without citation to au-thority, Lewis contends that because this action depends on GPD's "actions and in-actions that arose from contracted services for the school system," GPD is a proper party. Lewis's argument is unpersuasive. If GPD is not subject to suit for the depart-ment's policing actions, the department is not a proper party to an action for con-tract-police services at a school.

- 3 -

Even assuming that Lewis names the proper party, the City of Gulfport, a re-
view of the allegations against GPD reveals several deficiencies. Under Section
1983, a local government or municipality is "responsible only for '[its] *own* illegal
acts.'" *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (quoting *Pembaur v. Cincinnati,*
475 U.S. 469, 479 (1986)) (emphasis in original). A municipality is "not vicariously
liable under [Section] 1983 for their employees' actions." *Connick*, 563 U.S. at 60;
*Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691 (1978). For a mu-
nicipality to be liable, a plaintiff must establish that the municipality's "action pursu-
ant to official municipal policy of some nature caused a constitutional tort." *Monell*,
436 U.S. at 691; *City of Canton, Ohio v. Harris*, 489 U.S. 378, 389 (1989) ("[A] munici-
pality can be liable under [Section] 1983 only where its policies are the 'moving force
[behind] the constitutional violation.'" (quotation omitted)). "Official municipal pol-
icy includes the decisions of a government's lawmakers, the acts of its policymaking
officials, and practices so persistent and widespread as to practically have the force of
law." *Connick*, 563 U.S. at 61.

A municipality's "decision not to train certain employees about their legal
duty to avoid violating citizens' rights may rise to the level of an official government
policy for purposes of [Section] 1983." *Connick*, 563 U.S. at 61. To warrant consid-
eration as a "policy or custom," a municipality's failure to train its employees "must
amount to 'deliberate indifference to the rights of persons with whom the [untrained
employees] come into contact.'" *Connick*, 563 U.S. at 61 (quoting *City of Canton*, 489
U.S. at 388) (alteration in original). "'[D]eliberate indifference' is a stringent

- 4 -

standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 410 (1997).  A plaintiff can show deliberate indifference if a municipality's policymakers have "actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights." *Connick*, 563 U.S. at 61.

A review of the complaint reveals only conclusory allegations that GPD's "failure to train was deliberately indifferent."  The complaint fails to allege any facts about GPD's training policy.  No factual allegations appear to establish that GPD had "actual or constructive knowledge" that the GPD's lack of training would "cause constitutional violations."  No specific allegations of "[a] pattern of similar constitutional violations by" other "untrained" GPD employees appear in the complaint.  *Connick*, 563 U.S. at 62.  The allegations are insufficient to establish that GPD's failure to train amounts to a policy or practice.  Also, the allegations fail to establish that GPD was deliberately indifferent.

Because GPD is not a proper party to this action, each claim against GPD warrants dismissal.  If Lewis amends the complaint to allege a Section 1983 claim for failure to train against the City of Gulfport, the amended complaint must include sufficient factual allegations to establish municipal liability under *Connick*.

## II. Vandenberg's Motion to Dismiss

Vandenberg argues that each claim against him warrants dismissal because (1) Vandenberg is entitled to qualified immunity for Lewis's Section 1983 claims

(Counts IV and VI), and (2) Vandenberg is entitled to immunity under Section 768.28(9)(a), Florida Statutes, for Lewis's state law claims (Counts VII, VIII, and IX).

     1.  Qualified Immunity

"Qualified immunity shields government employees from suit in their individual capacities for discretionary actions they perform while going about their duties." *Brooks v. Miller*, 78 F.4th 1267, 1279 (11th Cir. 2023). "Because making an arrest is within the official responsibilities" of the police, an officer who arrests a suspect "perform[s] a discretionary function." *Crosby v. Monroe County,* 394 F.3d 1328, 1332 (11th Cir. 2004); *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002) ("[I]t is clear that Officer Stanfield was acting within the course and scope of his discretionary authority when he arrested Vinyard and transported her to jail."). Vandenberg argues that each of Vandenberg's actions was "discretionary," and the complaint states that "at all times" Vandenberg was "acting within the course and scope of his employment." Vandenberg's arrest and use of force against M.S. were discretionary acts.

After a defendant establishes that the officer was "acting within the scope of his discretionary authority," to overcome qualified immunity a plaintiff must establish (1) that "the defendant violated a constitutional right" and (2) that the "constitutional right was 'clearly established' at the time of the defendant's actions." *Brooks*, 78 F.4th at 1280 (quoting *Powell v. Snook*, 25 F.4th 912, 920 (11th Cir. 2022)). Lewis alleges that Vandenberg violated the Fourteenth Amendment by falsely arresting

- 6 -

M.S. (Count IV) and by using excessive force (Count VI) against M.S.  Also, Lewis argues that Vandenberg's actions violated M.S.'s "clearly established rights."

To state a claim for false arrest, a plaintiff must allege "(1) a lack of probable cause and (2) an arrest."  *Brooks*, 78 F.4th at 1281.  An officer has probable cause to arrest if "a reasonable officer could conclude . . . that there [is] a substantial chance of criminal activity."  *Washington v. Howard*, 25 F.4th 891, 902 (11th Cir. 2022).  The complaint alleges that M.S. was not violating any law, that M.S. was not violent, and that Vandenberg handcuffed and arrested M.S. without probable cause.  Lewis alleges that for an unspecified time and without probable cause, Vandenberg detained M.S. in the media center.  M.S. remained handcuffed until the "arrival of [M.S.'s] grandfather . . . to the media [center]."  The complaint states a claim for false arrest.

Count VI asserts a claim for the use of excessive force.  "Excessive force" is force that is not "objectively reasonable in light of the facts confronting the officer."  *Brooks*, 78 F.4th at 1282 (quoting *Vinyard*, 311 F.3d at 1347).  The reasonableness of an officer's use of force is evaluated by considering several factors, including (1) the severity of the suspect's crime, (2) the type of threat the suspect poses to the officer's safety and the safety of others, and (3) the degree to which the suspect is resisting arrest or attempting to flee.  *Cantu v. City of Dothan*, 974 F.3d 1217, 1229 (11th Cir. 2020).

Lewis alleges that while M.S. was involved in a "verbal disturbance" with a group of students, Vandenberg "grabbed [M.S.] from behind, pinned [M.S.] hard up

against the wall and placed [M.S.] in handcuffs." Vandenberg tightened the hand-cuffs "so tightly that [M.S.'s] hands and fingers went numb." Vandenberg "grabbed M.S.'s arm and took M.S. to the locked media center." At the media center, the complaint alleges that Vandenberg "slung M.S. towards the door, where [M.S.] hit her head on the metal divider, causing [M.S.'s] forehead to split open." In the media center, Vandenberg "slung M.S. onto the ground, which resulted in the physical injury of cuts and bruises on [M.S.'s] face and shoulder." M.S.'s mother took M.S. to the emergency room, and a "doctor diagnosed M.S. with a concussion along with multiple other injuries."

Viewed in "the light most favorable" to Lewis, at the time of her arrest, M.S. was not committing a crime, M.S. was a high-school-aged female who was not threatening Vandenberg's safety, and M.S. did not attempt to resist arrest or flee. Although "slung" is ambiguous, the inference most favorable to Lewis is that without cause or necessity Vandenberg threw M.S.'s head into the door frame and threw M.S. onto the ground all of which injured M.S.'s head and shoulder. At the time Vandenberg "slung" M.S. into the door and "slung" M.S. to the ground, M.S. was handcuffed. Assuming that M.S. committed no crime, was docile, and was not resisting, Vandenberg's use of force was "gratuitous." The complaint states a claim for Vandenberg's use of excessive force in violation of the Fourteenth Amendment.

"In determining whether a right was clearly established, we look to the decisions of the United States Supreme Court, the Eleventh Circuit, and the Florida Supreme Court." *Saunders v. Duke*, 766 F.3d 1262, 1266 (11th Cir. 2014). The Eleventh

Circuit has "repeatedly ruled that a police officer violates the Fourth Amendment, and is denied qualified immunity, if he or she uses gratuitous and excessive force against a suspect who is under control, not resisting, and obeying commands." *Saunders*, 766 F.3d at 1265 (holding that "slamming" against the pavement a handcuffed plaintiff's head violated a "clearly established right"); *Lee v. Ferraro*, 284 F.3d 1188, 1196 (11th Cir. 2002) (holding that an officer's slamming a handcuffed suspect's head into a car violated a "clearly established right"); *Hadley v. Gutierrez*, 526 F.3d 1324, 1334 (11th Cir. 2008) (holding that an officer's single punch to the stomach of a handcuffed suspect violated a "clearly established right"). In 2022, the use of "gratuitous and excessive force" against M.S. — who was under control, not resisting, and obeying commands — violated M.S.'s "clearly established rights." Assuming as true the allegations in the complaint, Vandenberg is not entitled to qualified immunity on the motion to dismiss for Counts IV and VI.

2. Sovereign Immunity

Lewis asserts against Vandenberg under Florida law a claim for assault (Count VII), a claim for battery (Count VIII), and a claim for false imprisonment (Count IX). Section 768.28(9)(a), Florida Statutes, waives Florida's sovereign immunity for certain tort causes of action. Section 768.28(9)(a) states as follows:

> An officer, employee, or agent of the state or of any of its subdivisions may not be held personally liable in tort or named as a party defendant in any action for any injury or damage suffered as a result of any act, event, or omission of action in the scope of her or his employment or function, unless such officer, employee, or agent acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property.

An officer acts in "bad faith" if the officer acts with "ill will, hatred, spite, [or] an evil intent." *Reed v. State*, 837 So.2d 366, 368–69 (Fla. 2002). "Conduct meeting the wanton and willful standard is defined as worse than gross negligence and more reprehensible and unacceptable than mere intentional conduct." *Eiras v. Fla.*, 239 F. Supp. 3d 1331, 1343 (M.D. Fla. 2017) (Howard, J.) (quotations omitted). But a complaint with "a threadbare recital that a defendant 'acted maliciously and in bad faith is conclusory' and insufficient." *Eiras*, 239 F. Supp. 3d at 1344.

Although the complaint alleges (Doc. 2 at 30, 33, 35) that Vandenberg acted "in bad faith, or with malicious purpose, or in a manner exhibiting wanton and willful disregard of human rights," a review of the complaint reveals no other specific factual allegations that Vandenberg acted in "bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights." The conclusory allegations in the complaint are insufficient to establish Vandenberg's personal liability. The complaint fails to allege with sufficient detail conduct that overcomes Vandenberg's immunity under Section 768.28(9)(a).

### III.    The School Board's Motion to Dismiss

The school board argues that Boca Ciega High School is not a proper party to this action. Section 1001.41, Florida Statutes, states that a county's "district school board" can "sue, and be sued." *See Sch. Board of Marion Cnty. v. State Farm Mut. Auto. Ins. Co.*, 397 So. 3d 248, 249 (Fla. 5th DCA 2024). Lewis cites no authority supporting the contention that Boca Ciega High School is a proper party in this action. No

- 10 -

allegation appears that Boca Ciega High School is an "agenc[y] or subdivision[]" of the state of Florida under Section 768.28, Florida Statutes.

Also, under Section 1983, a county's school board is a "local government body" subject to liability. *Cuesta v. Sch. Bd. of Miami-Dade Cnty., Fla.*, 285 F.3d 962, 966 (11th Cir. 2002). Nothing alleged in the complaint establishes that Boca Ciega High School is a "local government body." The Pinellas County School Board's by-laws state that "[t]he School Board is responsible for the organization and control of the public schools of the District and is empowered to determine the policies neces-sary for the effective and efficient operation and the general improvement of the school system."[1] The school board "operate[s], control[s], and supervise[s] all public schools in the District . . . ." The school board is the proper party to this action, not Boca Ciega High School.

The school board contends that the complaint is a "shotgun pleading" and warrants dismissal. "The most common type [of shotgun pleading] — by a long shot — is a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint." *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1321 (11th Cir. 2015).

Each count in the complaint "reaffirms and realleges the allegations contained in paragraphs 1 through 14 and 15 through 92 of the Complaint." A review of the

---

[1] *Pinellas County Schools Bylaws and Policies*, § 0121, https://go.boarddocs.com/fl/pcsfl/Board.nsf/vpublic?open# (last visited May 15, 2025).

- 11 -

complaint reveals that each Count incorporates only the general allegations that pertain to each Count. *Weiland*, 792 F.3d at 1324 (finding that if "[t]he allegations of each count are not rolled into every successive count on down the line," the complaint is not a "shotgun pleading"). The complaint gives the school board "adequate notice of the claims being brought against [the school board] and the supporting factual allegations for each claim." *Dream Defs. v. DeSantis*, 553 F. Supp. 3d 1052, 1091 (N.D. Fla. 2021) (quotation omitted). The complaint is not a "shotgun pleading."

The school board argues (Doc. 35 at 9–11) that the complaint fails to adequately allege that Lewis served the school board with pre-suit notice as required by Section 768.28(6)(a), Florida Statutes. The complaint alleges (Doc. 2 at 3) that Lewis "filed a timely Notice of Claim in accordance with Florida Statute §768.28 against the Defendants on or about October 31, 2022 . . . ." Also, Lewis attaches (Doc. 41-1) to the response a copy of the notice letter Lewis sent to the school board and GPD. Lewis sufficiently alleges that Lewis has satisfied the requirements of Section 768.28(6)(a).

The school board contends that the complaint fails to state a claim against the school board. Count I alleges that the school board negligently failed to "intervene" to protect M.S. from Vandenberg, and Count II alleges that the school board negligently retained MPD as a contractor. The school board has "a duty to provide supervision and protection to minor students on the school premises." *Broward Cnty. Sch. Bd. v. Ruiz*, 493 So. 2d 474, 477 (Fla. 4th DCA 1986); *Limones v. Sch. Dist. of Lee Cty.*, 161 So.3d 384, 390 (Fla. 2015) ("Florida courts have recognized a special

relationship between schools and their students based upon the fact that a school functions at least partially in the place of parents during the school day and school-sponsored activities."). "This duty to supervise requires teachers and other applicable school employees to act with reasonable care under the circumstances." *Saphir by & through Saphir v. Broward Cnty. Pub. Sch.*, 744 F. App'x 634, 640 (11th Cir. 2018) (quoting *Limones*, 161 So.3d at 390).

Count I alleges that the school board breached its duty to M.S. because school board "officials and employees . . . did not intervene to stop" Vandenberg "from harming and assaulting M.S." The complaint fails to allege specific facts establishing that the school board "needed to take special care" with Vandenberg. *Saphir*, 744 F. App'x at 640. Because the complaint alleges that Vandenberg was an agent of the school board, Vandenberg's arrest of M.S. was an "intervention" by the school board. Count I fails to state a claim for negligence.

Count II alleges that the school board negligently retained GPD as a contractor for school security. To state a claim for negligent retention of a contractor, "a plaintiff must demonstrate (1) the incompetence or unfitness of the contractor; (2) the defendant's knowledge of the contractor's incompetence or unfitness; and (3) that the contractor's incompetence or unfitness proximately caused the plaintiff's injuries." *Woodley v. Royal Caribbean Cruises, Ltd.*, 472 F. Supp. 3d 1194, 1205 (S.D. Fla. 2020). "[L]iability hinges on whether the defendant was aware or should have been aware of such unfitness during the course of the contractor's employment." *Woodley*, 472 F. Supp. 3d at 1205 (quotation omitted). "There must be a connection and

- 13 -

foreseeability between the employee's employment history and the current tort committed by the employee." *Saphir*, 744 F. App'x at 640 (quotation omitted).

The complaint lacks sufficient, non-conclusory factual allegations that GPD was "incompetent" or "unfit," that the school board knew that GPD was incompetent or unfit, and that GPD's incompetence or unfitness caused M.S.'s injuries. Although the complaint states in a conclusory manner that the school board was "aware or should have been aware of . . . numerous acts of physical assault and excessive force use[d] by GPD officers and agents," the complaint contains no specific allegations of unlawful use of force by GPD against students other than M.S. Further, no allegations appear that the school board knew of any unlawful use of force by GPD before the arrest of M.S. Count II fails to state a claim for negligent retention.

Under Section 768.28(1), the school board can be liable for the intentional torts of a school board's employee or agent. Because the complaint alleges that Vandenberg acted within the scope of his duties as a contractor of the school board and because the complaint states a claim for battery, assault, and false imprisonment, Counts VII, VIII, and IX each sufficiently allege a claim against the school board.

## CONCLUSION

GPD's motion to dismiss (Doc. 27) is **GRANTED**. The action against GPD is **DISMISSED**. Vandenberg's motion (Doc. 30) to dismiss is **GRANTED-IN-PART**. Counts VII, VIII, and IX against Vandenberg are **DISMISSED WITHOUT PREJUDICE**. Boca Ciega High School's motion (Doc. 35) to dismiss is **GRANTED**. The action against Boca Ciega High School is **DISMISSED**. The

school board's motion (Doc. 35) to dismiss is **GRANTED-IN-PART**.  Counts I and II are **DISMISSED WITHOUT PREJUDICE**.  Lewis's motion (Doc. 41) to amend the complaint is **GRANTED**.  No later than JUNE 20, 2025, Lewis may amend the complaint.

ORDERED in Tampa, Florida, on May 27, 2025.

STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE

- 15 -